# STATE OF WEST VIRGINIA

*In re* **A.H. and A.G.-1**

**No. 18-1144** (Clay County 18-JA-30 and 18-JA-31)

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father A.G.-2, by counsel Andrew Chattin, appeals the Circuit Court of Clay County's November 26, 2018, order terminating his parental rights to A.H. and A.G.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Michael W. Asbury Jr., filed a response on behalf of the children, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him an improvement period and when the DHHR's family case plan did not recommend termination of his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Around June of 2018, the DHHR filed a child abuse and neglect petition against the parents after Child Protective Services ("CPS") workers found the mother of A.H. in a state of intoxication while the child was in her care and also found known drug users passed out in the child's bedroom. Two subsequent amended petitions were filed to add allegations against petitioner. The DHHR alleged that he previously had his parental rights to an older child involuntarily terminated and thereafter failed to correct the conditions of abuse that led to that termination, "including, but not limited to, abandonment, failure to protect and unfit home." Regarding the children at issue on appeal, the DHHR alleged that petitioner "knowingly or intentionally inflict[ed] or attempt[ed] to

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as A.G.-1 and A.G.-2, respectively, throughout this memorandum decision.

1

inflict or allowed another person to inflict physical injury or mental or emotional injury upon the [children]." Further, petitioner abandoned A.G.-1 and had not seen or contacted the child since his birth, and he failed to provide a fit and suitable home, emotional support, and financial support to both children.

The circuit court held an adjudicatory hearing in September of 2018. After hearing evidence, the circuit court found that petitioner failed to provide a fit and suitable home, financial support, and appropriate care for the children, and failed to maintain contact with them. Accordingly, the circuit court adjudicated petitioner as an abusing parent.

In October of 2018, the circuit court held a dispositional hearing. While testimony established that petitioner engaged in meaningful visitation with his children and provided negative drug screens, the CPS worker testified that the DHHR was recommending termination of his parental rights based upon the aggravated circumstances of his prior termination of parental rights and his subsequent failure to address the conditions that led to that termination. The CPS worker testified that petitioner failed to obtain and maintain employment or housing. Petitioner confirmed that he lived in a camper that was provided electricity via an extension cord, but testified that his parents would attempt to pay rent for an apartment for him to live in. He further suggested that he could "stay with a friend. I could find a place to stay for the weekend to have time with my kids." Petitioner testified that he had to rely on others for transportation. Regarding his prior proceedings, petitioner admitted that he participated in parenting and adult life skills classes, but stated he had only learned "[d]on't trust women." When asked if he had learned anything else, petitioner stated: "What else? Don't trust women. I mean, that's why I am where I am for a lot of reasons." After hearing evidence, the circuit court determined that petitioner "lacks the motivation to do anything." The court further found that petitioner failed to correct the conditions of abuse which resulted in the prior termination of his parental rights and that his situation had actually significantly deteriorated since the prior termination. Accordingly, the circuit court terminated petitioner's parental rights upon findings that that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the children. It is from the November 26, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there

---

[2]The children's mothers are currently participating in improvement periods and are reportedly complying with services. The permanency plan for the children is reunification with their mothers pending their successful completion of their improvement periods. The concurrent permanency plan is adoption.

is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court should not have terminated his parental rights without first granting him an improvement period. According to petitioner, his testimony established that he would comply with all directives of the circuit court and was seeking employment and appropriate housing. Petitioner also argues that the circuit court should not have terminated his parental rights when the case plan filed by the DHHR did not recommend termination of his parental rights. He avers that he was prejudiced by the lack of an accurate case plan and the failure to provide the same constitutes reversible error.[3] We disagree.

Pursuant to West Virginia Code § 49-4-610, a circuit court may grant an improvement period when the parent "files a written motion requesting the improvement period" and "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

Petitioner fails to establish that he was entitled to an improvement period. Although petitioner complied with parenting and adult life skills classes, drug screens, and supervised visitation, he failed to obtain employment or suitable housing and lived in a camper at the time of the dispositional hearing. Further, despite the provision of services in his prior abuse and neglect case and during the underlying proceedings, petitioner testified that he had only learned not to "trust women. I mean, that's why I am where I am for a lot of reasons." We have previously held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator

---

[3]To the extent petitioner argues that he was prejudiced by the DHHR's failure to provide an updated or more accurate family case plan, we note that he failed to object to the case plan below. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we decline to address this argument on appeal given petitioner's failure to raise the issue before the circuit court below.

3

of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). As such, despite his testimony that he would comply with an improvement period, petitioner's failure to acknowledge the conditions of abuse and neglect demonstrate that granting him an improvement period would merely be an exercise in futility at the children's expense. Accordingly, we find no error in the circuit court's decision.

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

As set forth above, petitioner clearly failed to respond to or follow through with rehabilitative efforts designed to reduce or prevent the abuse and neglect of his children. Aggravated circumstances existed due to petitioner's prior involuntary termination of parental rights, and the DHHR presented testimony that the issues of abuse from the prior proceedings remained unaddressed. Despite having been provided services in prior proceedings and the underlying proceedings, petitioner was unemployed, lived in camper, and blamed women for his circumstances. As such, petitioner failed to address the allegations of abuse regarding lack of suitable housing and financial and emotional support for the children. Therefore, we agree with the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. As we have previously held, the

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the evidence mentioned above, we find that the circuit court correctly terminated petitioner's parental rights and that he is entitled to no relief in this regard.

Lastly, because the proceedings regarding the mothers remain ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 26, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: May 24, 2019

5

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison